UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
JOHN WHALEY and ANTONIO RIVERA,

                              Plaintiffs,                    ORDER
             -against-                                       12-CV-2889(SJF)(ARL)

DETECTIVE GREGORY LOPEZ, Shield #1187                        **FILED**
of the Suffolk County Police Department, SPECIAL            IN CLERK'S OFFICE
AGENT WILLIAM E. BRUST of the Department of                 U S DISTRICT COURT E D N Y
Homeland Security or Immigration Customs Enforcement,
ASSISTANT UNITED STATES ATTORNEY DEMETRI                    ★    JUL 3 0 2012    ★
M. JONES, ASSISTANT UNITED STATES ATTORNEY
GENERAL JOHN COTTON RICHMOND, ELSA GARCIA,                  **LONG ISLAND OFFICE**
FLORFIDIA ALFARO, CESIA NOEMI HERNANDEZ,
JESSY CONTRERAS HERNANDEZ, MARINA RIQUELME
GARCIA, ALMA YANORY ANDRADE DIAZ, LESLIE
RUBIDELIA HERNA SANTOS, KEYBY JULISSA OCHOA
ANTUNEZ, TRACEY E. GAFFEY, GLENN A. OBEDIN,
individually and in their official capacities,

                              Defendants.
-------------------------------------------------------------------X

FEUERSTEIN, District Judge:

I.      Introduction

        On June 7, 2012, incarcerated *pro se* plaintiffs John Whaley ("Whaley") and Antonio Rivera

("Rivera") (collectively, "plaintiffs") filed a complaint pursuant to 42 U.S.C. §§ 1981, 1983 and

1985 and Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91

S. Ct. 1999, 29 L. Ed. 2d 619 (1971) ("Bivens"), against Detective Gregory Lopez ("Lopez"), Shield

#1187 of the Suffolk County Police Department; Special Agent William E. Brust ("Brust") of the

Department of Homeland Security or Immigration Customs Enforcement; Assistant United States

Attorney Demetri M. Jones ("Jones"); Assistant United States Attorney General John Cotton

1

Richmond ("Richmond"); "government witnesses" Elsa Garcia ("E. Garcia"), Florfidia Alfaro ("Alfaro"), Cesia Noemi Hernandez ("C. Hernandez"), Jessy Contreras Hernandez ("J. Hernandez"), Marina Riquelme Garcia ("M. Garcia"), Alma Yanory Andrade Diaz ("Diaz"), Leslie Rubidelia Hernandez Santos ("Santos"); Keyby Julissa Ochoa Antunez ("Antunez"); Tracey E. Gaffey, Esq. ("Gaffey"), of the Federal Defenders of New York; and Glenn A. Obedin ("Obedin") (collectively, "defendants"), each in their individual capacity, accompanied by applications to proceed *in forma pauperis* and for the appointment of *pro bono* counsel. On June 12, 2012, plaintiffs filed an amended complaint against defendants.

Plaintiffs' financial status, as set forth in their declarations in support of their applications to proceed *in forma pauperis*, qualifies them to commence this action without prepayment of the filing fees. 28 U.S.C. § 1915(a)(1). Accordingly, plaintiffs' applications to proceed *in forma pauperis* are granted. However, for the reasons set forth below, the amended complaint is *sua sponte* dismissed in its entirety pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) and plaintiffs' applications for the appointment of *pro bono* counsel are denied as moot.

II.    Background

On May 26, 2011, Rivera was convicted in this Court, upon a jury verdict, of one (1) count of conspiracy to commit sex trafficking by means of force, fraud and coercion in violation of, *inter alia*, 18 U.S.C. §§ 371 and 1591(a), effective October 28, 2000 to December 22, 2008[1]; one (1) count of conspiracy to commit sex trafficking by means of force, fraud and coercion in violation of, *inter*

---

[1] The prior statute, effective October 28, 2000 to December 22, 2008, will hereinafter be referred to as "18 U.S.C. § 1591 (2000)".

*alia*, 18 U.S.C. §§ 1594(c), effective December 23, 2008, and 1591(a), as amended by the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), Pub. L. 110-457, 122 Stat. 5044, Title II, § 222(b)(5), enacted on December 23, 2008[2]; four (4) counts of sex trafficking by means of force, fraud and coercion in violation of, *inter alia*, 18 U.S.C. § 1591(a) (2000); two (2) counts of sex trafficking by means of force, fraud and coercion in violation of, *inter alia*, 18 U.S.C. § 1591(a) (2009); one (1) count of conspiracy to commit forced labor in violation of, *inter alia*, 18 U.S.C. §§ 371 and 1589, effective October 28, 2000 to December 22, 2008[3]; one (1) count of conspiracy to commit forced labor in violation of, *inter alia*, 18 U.S.C. §§ 1589(d), as amended by the TVPRA,[4] effective December 23, 2008, and 1594(b), effective December 23, 2008; seven (7) counts of forced labor in violation of, *inter alia*, 18 U.S.C. § 1589 (2000); four (4) counts of forced labor in violation of, *inter alia*, 18 U.S.C. §1589 (2009); one (1) count of conspiracy to transport and harbor aliens in violation of, *inter alia*, 8 U.S.C. § 1324(a)(1); seven (7) counts of transportation of aliens within the United States in violation of, *inter alia*, 8 U.S.C. § 1324(a)(1); and seven (7) counts of alien harboring in violation of, *inter alia*, 8 U.S.C. § 1324(a)(1). On that same date, Whaley was convicted in this Court, upon a jury verdict, of one (1) count of conspiracy to commit sex trafficking by means of force, fraud and coercion in violation of, *inter alia*, 18 U.S.C. §§ 371 and 1591(a) (2000); one (1) count of conspiracy to commit sex trafficking in violation of,

---

[2] The current statute, effective December 23, 2008, will hereinafter be referred to as "18 U.S.C. § 1591 (2009)."

[3] The prior version of 18 U.S.C. § 1589, effective October 28, 2000 to December 22, 2008, will hereinafter be referred to as "18 U.S.C. § 1589 (2000)."

[4] The current version of 18 U.S.C. § 1589, effective December 23, 2008, will hereinafter be referred to as "18 U.S.C. § 1589 (2009)."

*inter alia*, 18 U.S.C. §§ 1594(c) and 1591(a) (2009); one (1) count of conspiracy to commit forced labor in violation of, *inter alia*, 18 U.S.C. §§ 371 and 1589 (2000); one (1) count of conspiracy to commit forced labor in violation of, *inter alia*, 18 U.S.C. §§ 1589(d) and 1594(b) (2009); four (4) counts of forced labor in violation of, *inter alia*, 18 U.S.C. §1589 (2009); one (1) count of conspiracy to transport and harbor aliens in violation of, *inter alia*, 8 U.S.C. § 1324(a)(1); five (5) counts of transportation of aliens within the United States in violation of, *inter alia*, 8 U.S.C. § 1324(a)(1); and five (5) counts of alien harboring in violation of, *inter alia*, 8 U.S.C. § 1324(a)(1).

In July and August of 2011, plaintiffs separately challenged their convictions by filing motions pursuant to Rule 29(c)(2) and/or Rule 33 of the Federal Rules of Criminal Procedure to set aside the jury verdict and enter a judgment of acquittal or for a new trial, respectively, in the criminal proceedings against them. See United States v. Rivera, No. 09-CR-619 (Doc. Nos. 241 and 242). By order dated June 19, 2012, *inter alia*: (a) the branch of Whaley's motion seeking to set aside the verdict pursuant to Rule 29 of the Federal Rules of Civil Procedure was granted to the extent that so much of the verdict as found plaintiffs guilty of counts one (1) and six (6) of the superceding indictment was vacated and those counts of the superceding indictment were dismissed as against plaintiffs as multiplicitous, and Whaley's motion was otherwise denied; and (b) Rivera's motion was denied in its entirety.

In November 2011, plaintiffs again challenged their convictions by separately filing motions pursuant to 28 U.S.C. § 2255 ("the 2255 proceedings"). Whaley v. United States of America, No. 11-CV-5471; Rivera v. United States of America, No. 11-cv-5579. By orders dated February 1, 2012, plaintiffs' 2255 motions were denied without prejudice as premature since they have not yet been sentenced upon their convictions. Plaintiffs' subsequent motions seeking leave to reopen the

4

2255 proceedings were denied by orders dated February 27, 2012 and March 13, 2012, respectively. In addition, Whaley's motion seeking, in essence, reconsideration of the February 1, 2012 order was denied by order dated March 9, 2012.

On June 12, 2012, plaintiffs filed the instant action against defendants pursuant to Sections 1981, 1983 and 1985 and Bivens. In their amended complaint, plaintiffs allege, *inter alia*: (1) that defendants conspired to deprive them of their constitutional rights to due process, equal protection of the laws and a fair trial in violation of the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution (Claim One as against all defendants; Amend. Comp., ¶¶ 108-111); (2) that Lopez and Brust falsely arrested them and denied them their right to a fair trial and to the equal protection of the laws in violation of their Fourth, Fifth, Sixth and Fourteenth Amendment rights (Claim Two as against Lopez and Brust; Amend. Compl., ¶ 108); (3) that Gaffey and Obedin, counsel who represented Whaley and Rivera, respectively, during the criminal trial, (a) committed attorney malpractice and were negligent in violation of their Sixth Amendment right to the effective assistance of counsel (Claim Three as against Gaffey and Obedin), and (b) denied them their right to equal protection of the laws, a fair trial and due process in violation of the First, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, (Amend. Compl., ¶ 109); (4) that Jones and Richmond, the prosecutors in the criminal action, (a) denied them their rights to due process and a fair trial in violation of the Fifth and Sixth Amendments to the United States Constitution (Claim Four as against Jones and Richmond), and (b) denied them their right to indictment by a Grand Jury and equal protection of the laws in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, (Amend. Compl., ¶ 110); (5) that Lopez, Brust, Jones and Richmond selectively prosecuted them and denied them their right to equal protection of the laws in violation

5

of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §§ 1981 and 1985 (Claim Five as against Lopez, Brust, Jones and Richmond); and (6) that the government witnesses, who testified against plaintiffs during the criminal trial, deprived them of their rights to a fair trial and "to probable cause for the[ir] arrest," (Amend. Compl., ¶¶ 106, 111), in violation of the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution (Claim Six as against the government witnesses).

With respect to their conspiracy claim against all defendants, plaintiffs allege, *inter alia*: (a) that Lopez "pressed" Brust into bringing federal criminal charges against them after he failed to obtain evidence of prostitution or any violation of the New York State penal law during his raids on Rivera's two (2) bars; (b) that Brust sought arrest and search warrants solely "to further [his] own personal goals in arrest," (Amend. Compl., ¶ 41(B)); (c) that Lopez, Brust, Jones and Richmond (i) agreed to question the government witnesses about any unlawful conduct at the bars and (ii) "intimidated and * * * coerc[ed] [the government witnesses] into changing their testimony," (Amend. Compl., ¶ 41(I)); (d) that Jones and Richmond investigated the case against plaintiffs prior to its presentment to a Grand Jury and, thereafter, moved for a superceding indictment against them; (e) that Gaffey and Obedin (i) failed to call and meet defense witnesses, to submit documentation of the bar raids and "to investigate the entire case," (Amend. Comp., ¶ 41(E)), and (ii) worked with the government "inorder [sic] to not provide and maintain a defense to Plaintiffs," (id.); (f) that the government witnesses "reported and commenced a criminal proceeding [against them] by offering false testimony in a jury trial to Defendants Jones, Richmond, Lopez and Brust * * * and during the investigation stage prior to presentment to a Grand Jury indictments [sic]," (Amend. Compl., ¶ 41(F)); and (g) that defendants "present[ed] fabricated evidence in their investigative capacity,

6

(Amend. Compl., ¶ 41(G)).

With respect to their false arrest claims, plaintiffs allege, *inter alia*, that Lopez and Brust: (1) falsely arrested them "based upon false statements made in [the] affidavit for an arrest and search warrant * * * and Grand Jury testimony," (Amend. Compl., ¶ 43); (2) did not make "a complete and full statement of the facts either to the Grand Jury or to the prosecutors," in procuring the indictments against plaintiff, (id.); and (3) "misrepresented or falsified evidence, * * * withheld evidence, or otherwise acted in bad faith to convince the Grand Jury to indict [plaintiffs]," (id.)

With respect to their claims against Gaffey and Obedin, plaintiffs allege, *inter alia*, that those defendants "failed to maintain and obtain defense witnesses for trial, failed to provide a defense during trial, failed to investigate the criminal case [against plaintiffs], failed to play a video surveillance system of the bars activities to the jury, failed to question Defendants Lopez and Brust effectively inregards [sic] to the investigation of the criminal case, failed to investigate Government witnesses, failed to provide documents that pertain to investigation prior to arrest warrants being issued, failed to investigate other Spanish bars where Government witnesses were working at the time, failed to hold or file for hearings * * * on probable cause to arrest, failed to object to the superceding indictment * * *, failed to fully cross-examine Government witnesses, failed to move to arrest [sic] the Complaint/affidavit filed by Defendant Brust, failed to cross-examine Defendants Lopez and Brust about the American waitresses who worked in the bars, [and] failed to hold at lease [sic] a fair trial * * *." (Amend. Compl., ¶ 47).

With respect to their claims against Jones and Richmond, plaintiffs allege, *inter alia*, that those defendants: (1) fabricated evidence "by coercing [the government witnesses], through threats of deportation, by means of force, fraud and intimidation * * *, inorder [sic] to provide

7

misstatements, perjury, contradictory testimony while [they] knew and should have known in disregard of the facts that [the government witnesses] was [sic] testifying falsely," (Amend. Compl., ¶ 70); (2) "procured an indictment based upon fraud, perjury, major contradictions and went forward with the indictment without first investigating further," (Amend. Compl., ¶ 71); (3) knew or should have known prior to or during their investigation that Lopez and Brust "lied to the Grand Jury and provid[ed] falsified evidence * * *," (Amend. Compl., ¶¶ 72-73); (4) "inaccurately quoted from [the government witnesses'] testimony" and made misstatements during their opening and closing arguments at trial, (Amend. Compl., ¶ 74); and (5) "fail[ed] to turn over customers [sic] statements" in violation of <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), (Amend. Compl., ¶ 75).

With respect to their equal protection claims, plaintiffs allege, *inter alia*: (1) that Lopez, Brust, Jones and Richmond "treated [them] very differently than other people who operated other Spanish bars * * * and who hired [some of the government witnesses] to work therein as waitresses * * *," (Amend. Compl., ¶¶ 79, 86); (2) that Lopez did so "solely inorder [sic] to make a merit badge for good work as a detective," (Amend. Compl., ¶ 82); (3) that Lopez, Brust, Jones and Richmond all acted "with the intent to inhibit or punish the exercise of constitutional rights, or mailicious[ly] or [in] bad faith to injure Plaintiffs [sic] liberty interests, (Amend. Compl., ¶ 83); and (4) that the selective treatment was "based on impermissible considerations because Plaintiffs * * * have [prior] felony convictions * * *," (Amend. Compl., ¶ 87).

With respect to their claims against the government witnesses, plaintiffs allege, *inter alia*, that those defendants: (1) "initiat[ed] the prosecution [against plaintiffs] by providing false information and fabricated evidence that did influence Defendants Lopez, Brust, Jones and

Richmond to act and arrest Plaintiffs * * * and h[o]ld Plaintiffs for a Grand Jury indictment," (Amend. Compl., ¶¶ 90, 106); and (2) lied and committed perjury during the criminal proceedings against plaintiffs.

Plaintiffs seek, *inter alia*: (a) judgment declaring that the conduct of defendants violated their constitutional rights; (b) an injunction ordering defendants to dismiss their arrests and all criminal charges against them; (c) compensatory damages in the amount of twenty million dollars ($20,000,000.00); and (d) punitive damages in the amount of forty million dollars ($40,000,000.00).

III.  Discussion

A.  The Prison Litigation Reform Act and *In Forma Pauperis* Statute

Under both the Prison Litigation Reform Act, 28 U.S.C. § 1915A, and the *in forma pauperis* statute, 29 U.S.C. § 1915(e)(2), a district court must dismiss a complaint if it is frivolous or malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B). See Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007) (finding both Section 1915 and Section 1915A to be applicable to a prisoner proceeding *in forma pauperis*).

It is axiomatic that district courts are required to read *pro se* complaints liberally, see Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)); Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011), and to construe them "to raise the strongest arguments [that they] suggest[]." Jabbar v. Fischer, 683 F.3d 54, 56 (2d Cir. 2012) (quotations, alterations and citations omitted). Moreover, at the pleadings stage of the proceeding, the Court must assume the truth of "all well-

pleaded, nonconclusory factual allegations in the complaint." Harrington v. County of Suffolk, 607 F.3d 31, 33 (2d Cir. 2010); see also Ashcroft v. Iqbal, 556 U.S. 662, 678-79, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

Nevertheless, a complaint must plead sufficient facts "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed.2d 929 (2007). The pleading of specific facts is not required; rather a complaint need only give the defendant "fair notice of what the * * * claim is and the grounds upon which it rests." Erickson, 551 U.S. 89, 127 S. Ct. at 2200 (quotations and citation omitted); see also Anderson News, L.L.C. v. American Media, Inc., 680 F.3d 162, 182 (2d Cir. 2012) (accord). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft, 556 U.S. at 678, 129 S.Ct. 1937 (quoting Twombly, 550 U.S. at 555, 127 S.Ct. 1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557, 127 S.Ct. 1955); see also Gallop v. Cheney, 642 F.3d 364, 368 (2d Cir. 2011) (accord). "Factual allegations must be enough to raise a right to relief above the speculative level, * * * on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555-56, 127 S.Ct. at 1959; see also Starr v. Sony BMG Music Entertainment, 592 F.3d 314, 321 (2d Cir. 2010), cert. denied, 131 S. Ct. 901, 178 L. Ed. 2d 803 (2011) (accord). The plausibility standard requires "more than a sheer possibility that defendant has acted unlawfully." Ashcroft, 556 U.S. at 678, 129 S.Ct. at 1949; see also Wilson v. Merrill Lynch & Co., Inc., 671 F.3d 120, 128 (2d Cir. 2011) (accord).

B.    Section 1983 and Bivens Claims

Section 1983 of Title 42 of the United States Code provides, in relevant part:

> "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."

To state a claim under Section 1983, a plaintiff must allege: (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010), cert. denied sub nom Cornejo v. Monn, 131 S. Ct. 158, 178 L. Ed. 2d 243 (2010) (quoting Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994)); see also Rehberg v. Paulk, 132 S. Ct. 1497, 1501-02, 182 L. Ed. 2d 593 (2012).

To state a claim under Bivens, a plaintiff must allege: (1) that the challenged conduct was committed by a person acting under color of *federal* law, and (2) that such conduct deprived the plaintiff of a constitutional or federal right. See Tavarez v. Reno, 54 F.3d 109, 109-10 (2d Cir. 1995). "Bivens actions are not significantly dissimilar to claims brought under §§ 1981 and 1983 in terms of the interests being protected, the relief which may be granted, and the defenses which may be asserted." Id. at 110 (quoting Chin v. Bowen, 833 F.2d 21, 23 (2d Cir. 1987)); see also Ashcroft, 556 U.S. at 675-76, 129 S. Ct. 1937 ("[Bivens] is the federal analog to suits brought against state officials under [Section 1983]." (quoting Hartman v. Moore, 547 U.S. 250, 254 n. 2, 126 S. Ct. 1695, 164 L. Ed. 2d 441 (2006)). "Because the two actions share the same practicalities of litigation * * * federal courts * * * typically incorporate[] Section 1983 law into Bivens actions." Tavarez, 54 F.3d at 110 (quotations and citations omitted); see also Chin, 833 F.2d at 24 (holding

that although Section 1983 and <u>Bivens</u> actions "are not precisely parallel," courts generally "incorporate Section 1983 law into <u>Bivens</u> suits.")

      1.    Claims Seeking Injunctive Relief

"Section 1983 must yield to the more specific federal habeas statute, with its attendant procedural and exhaustion requirements, where an inmate seeks injunctive relief challenging the fact of his conviction * * *." <u>Nelson v. Campbell</u>, 541 U.S. 637, 643, 124 S. Ct. 2117, 158 L. Ed. 2d 924 (2004). "Such claims fall within the 'core' of habeas corpus and are thus not cognizable when brought pursuant to Section 1983." <u>Id</u>. Moreover, since "the preemptive effect of a habeas corpus remedy is the same in prisoners' Section 1983 and <u>Bivens</u> suits," <u>Chin</u>, 833 F.2d at 24, such claims are also not cognizable in a <u>Bivens</u> action.

Plaintiffs' claims seeking injunctive relief dismissing their arrests and all criminal charges against them based upon the alleged constitutional violations during their arrests and criminal prosecutions clearly challenge the fact of their convictions. Accordingly, those claims are dismissed, without prejudice to commencing an appropriate Section 2255 proceeding upon sentencing, for failure to state a claim for relief.

      2.    Claims Seeking Damages

"[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a Section 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make

such determination, or called into question by a federal court's issuance of a writ of habeas corpus * * *. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under Section 1983." Heck v. Humphrey, 512 U.S. 477, 486-87, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994).[5] Thus, "a Section 1983 [or Bivens] suit for damages that would 'necessarily imply' the invalidity of the fact of an inmate's conviction * * * is not cognizable under Section 1983 [or Bivens] unless and until the inmate obtains favorable termination of a state, or federal habeas, challenge to his conviction or sentence." Nelson, 541 U.S. at 646, 124 S. Ct. 2117 (quoting Heck, 512 U.S. at 487, 114 S. Ct. 2364); see also Peay v. Ajello, 470 F.3d 65, 68 (2d Cir. 2006). "This 'favorable termination' requirement is necessary to prevent inmates from doing indirectly through damages actions what they could not do directly by seeking injunctive relief- challenge the fact * * * of their confinement without complying with the procedural limitations of the federal habeas statute." Nelson, 541 U.S. at 646-47, 124 S. Ct. 2117. Moreover, "[t]he principle established in Heck- that a prisoner-plaintiff may not assert a civil damages claim that necessarily challenges the validity of an outstanding criminal conviction- is not * * * limited [to Section 1983 claims]," Amaker v. Weiner, 179 F.3d 48, 51 (2d Cir. 1999), and applies to Section 1981 and Section 1985 claims as well. Id. at 51-2; see also Kevilly v. New York, 410 Fed. Appx. 371, 374 n. 3 (2d Cir. Dec. 21, 2010) (summary order) (finding the plaintiff's Section 1985 conspiracy claim to be barred under Heck for the same reasons that his Section 1983 claims were barred).

---

[5] The Second Circuit has held that Heck applies to Bivens actions as well. See Tavarez, 54 F.3d at 110; Liffiton v. Reukauf, 101 F.3d 682, 1996 WL 170215, at * 1 (2d Cir. Apr. 11, 1996) (unpublished opinion) ("[A] plaintiff pursuing a Bivens claim must show not only that the challenged conduct was unlawful but also that it caused him compensable injury; conviction and punishment does not constitute such injury unless and until the conviction has been overturned or called into question by a habeas court. (citing Heck)).

Claims that a prosecutor withheld exculpatory evidence in violation of Brady, 373 U.S. 83, 83 S. Ct. 1194, "have ranked within the traditional core of habeas corpus and outside the province of Section 1983." Skinner v. Switzer, 131 S. Ct. 1289, 1300, 179 L. Ed. 2d 233 (2011); see also Amaker, 179 F.3d at 51 (holding that a claim that the defendant was denied his right to meaningful court access by the withholding of exculpatory evidence called into question the validity of his conviction and, thus, was barred by Heck). Moreover, "allegations of extensive conspiratorial misconduct between * * * defense counsel and the prosecution would render [the plaintiffs'] conviction[s] invalid if they were proved," and, thus, are barred by Heck. Peay, 470 F.3d at 68; see also Amaker, 179 F.3d at 51-52 (finding the plaintiff's causes of action to be barred by Heck because each of them turned on the asserted existence of a conspiracy to frame him for murder and any favorable resolution of them "plainly would call into question the validity of his conviction.") Further, "claims regarding the alleged insufficiency of the charging information, prosecutorial misconduct, and [a] conspiracy between * * * defense counsel and the [prosecution], as well as * * * claims arising from [the plaintiffs'] criminal prosecution * * * would imply the invalidity of [their] conviction * * * and [can] therefore be brought only if [their] conviction * * * has been reversed * * *, expunged * * *, declared invalid * * * or called into question by a federal court's issuance of a writ of habeas corpus." Kevilly, 410 Fed. Appx. at 374. In addition, claims seeking damages based upon the alleged ineffective assistance of defense counsel are barred under Heck. See Id. at 375 (holding that claims regarding "ineffective assistance of counsel, the false testimony of witnesses and police officers, malicious prosecution, and evidence tampering would also be barred under Heck."); Evans v. Nassau County, 184 F. Supp. 2d 238, 243 (E.D.N.Y. 2002) ("A money judgment in [the plaintiff's] favor on his Section 1983 false arrest and ineffective assistance of

counsel claims would necessarily imply the invalidity of the [sic] his criminal conviction and sentence * * * [and such claims] are barred by Heck.")

Since plaintiffs cannot establish that their convictions have been reversed, expunged, declared invalid "or otherwise called into question by * * * the issuance of a writ of habeas corpus," their claims pursuant to Sections 1981, 1983 and 1985 and Bivens seeking damages on the basis that defendants withheld or falsified evidence; presented false testimony to the Grand Jury or during the criminal trial, or otherwise engaged in prosecutorial misconduct; were involved in an extensive conspiracy to deprive them of their constitutional rights with respect to their arrests and prosecution; rendered ineffective assistance of counsel; or otherwise deprived them of a fair trial are dismissed without prejudice for failure to state a claim for relief.[6]

Moreover, to the extent plaintiffs' complaint can be read to assert a claim for malicious prosecution, such a claim is not only barred by Heck, but also fails to state a claim for relief since plaintiffs cannot establish that the criminal proceeding was terminated in their favor. See Heck, 512 U.S. at 484, 114 S. Ct. 2364; Lynch v. Suffolk County Police Department, 348 Fed. Appx. 672, 674 (2d Cir. Oct. 14, 2009) (summary order). Accordingly, any claim seeking damages for malicious prosecution is likewise dismissed without prejudice for failure to state a claim for relief.

Plaintiffs' false arrest claims are also barred as a matter of law because the criminal charges against them have not been "terminated in a manner indicating [their] innocence." Williams v. City

---

[6] The dismissal is without prejudice since plaintiffs may be able to state a plausible claim for relief in the event that their convictions are reversed or otherwise declared invalid. See Amaker, 179 F.3d at 52 (holding that disposition of claims on Heck grounds "warrants only dismissal *without* prejudice, because the suit may be reinstituted should plaintiff's conviction be expunged * * *, declared invalid * * * or called into question by a federal court's issuance of a writ of habeas corpus." (emphasis in original)).

of New York, 368 Fed. Appx. 263, 264 (2d Cir. Mar. 8, 2010); see also Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) ("If, following the arrest, the plaintiff was convicted of the charges against him, that conviction normally would be conclusive evidence of probable cause * * * if the conviction survives appeal."); Cameron v. Fogarty, 806 F.2d 380, 388 (2d Cir. 1986) ("[W]here law enforcement officers have made an arrest, the resulting conviction is a defense to a Section 1983 action asserting that the arrest was made without probable cause.") Since plaintiffs were convicted of the crimes for which they were arrested, and the convictions have not been vacated or reversed on appeal, they cannot state a claim for false arrest as a matter of law.

To the extent plaintiffs challenge their arrests as procured by fraud or false statements, see, e.g. Escalera v. Lunn, 361 F.3d 737, 743-44 (2d Cir. 2004) (holding that to prevail on a claim of false arrest based upon misstatements and omissions contained in a warrant application, the plaintiff "must demonstrate that the misstatements and omissions were necessary to the finding of probable cause." (quotations and citations omitted)); Smith v. Edwards, 175 F.3d 99, 105 (2d Cir. 1999) (holding that a plaintiff can demonstrate that his right to be free from arrest in the absence of probable cause "was violated where the [arresting] officer . . . knowingly and intentionally, or with reckless disregard for the truth, made a false statement. . . or omitted material information, and where such false or omitted information was necessary to the finding of probable cause." (quotations and citations omitted)), such claims would clearly imply the invalidity of their convictions since the "[a]bsence of probable cause is a necessary element of [a] false arrest * * * claim[]." Kent v. Thomas, 464 Fed. Appx. 23, 25 (2d Cir. Mar. 5, 2012) (summary order). Thus, any claim challenging the probable cause for plaintiffs' arrests is barred by Heck unless and until plaintiffs' convictions are reversed, expunged, declared invalid or otherwise called into question upon habeas review. See, e.g. Kevilly, 410 Fed.

16

Appx. at 374 (holding that claims regarding, *inter alia,* the false testimony of witnesses and police officers would be barred under Heck). Accordingly, plaintiffs' claims seeking damages for false arrest are dismissed without prejudice for failure to state a claim for relief.

The only claims asserted by plaintiffs in their amended complaint which are not barred by Heck are plaintiffs' selective prosecution and equal protection claims against Lopez, Brust, Jones and Richmond, since a favorable resolution of those claims would not necessarily imply the invalidity of plaintiffs' convictions.

In sum: (1) all of plaintiffs' claims seeking damages, with the exception of their selective prosecution and equal protection claims against Lopez, Brust, Jones and Richmond, are dismissed in their entirety as barred by Heck and/or for failure to state a claim for relief since the criminal proceedings were not terminated in plaintiffs' favor and their convictions have not been vacated or reversed on appeal; (2) for the reasons set forth below, plaintiffs' selective prosecution and equal protection claims are also dismissed for failure to state a claim for relief; and (3) the dismissal of all of plaintiffs' claims is without prejudice, with the exception that, for the reasons set forth below, (a) all of plaintiffs' claims seeking damages as against Jones and Richmond and (b) plaintiffs' claims against Lopez, Brust and the government witnesses seeking damages based upon their testimony to the Grand Jury and at trial, are dismissed in their entirety with prejudice.

a.    Equal Protection and Selective Prosecution Claims

Although "the decision whether to prosecute may not be based on an unjustifiable standard, such as race, religion, or other arbitrary classification," United States v. Armstrong, 517 U.S. 456, 464, 116 S. Ct. 1480, 134 L.Ed.2d 687 (1996) (quotations and citation omitted); see also United

States v. Alameh, 341 F.3d 167, 173 (2d Cir. 2003) (accord), a claim for selective enforcement requires a plaintiff to "demonstrate that the administration of a criminal law is directed so exclusively against a particular class of persons . . . with a mind so unequal and oppressive that the system of prosecution amounts to a practical denial of equal protection of the law." Armstrong, 517 U.S. at 464-65, 116 S.Ct. 1480 (quotations and citation omitted). "The [plaintiff] must demonstrate that the federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose." Id. at 465, 116 S. Ct. 1480; see also Alameh, 341 F.3d at 173. Such a demonstration requires the plaintiff to show (1) that "[he] compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as . . . intent to inhibit or punish the exercise of constitutional rights." LaTrieste Restaurant v. Village of Port Chester, 188 F.3d 65, 69 (2d Cir. 1999); see also United States v. Stewart, 590 F.3d 93, 121 (2d Cir. 2009); Diesel v. Town of Lewisboro, 232 F.3d 92, 103 (2d Cir. 2000).

In order to establish discriminatory effect, the plaintiff must show that similarly situated individuals of a different classification could have been prosecuted but were not. Armstrong, 517 U.S. at 465, 469, 116 S. Ct. 1480; Alameh, 341 F.3d at 173. "A defendant seeking to show discriminatory purpose must show that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part because of * * * its adverse effects upon an identifiable group." Alameh, 341 F.3d at 173 (quotations and citation omitted); see also Anderson v. City of New York, 817 F. Supp. 2d 77, 95 (E.D.N.Y. 2011). "[M]ere failure to prosecute other offenders is not a basis for a finding of denial of equal protection." LaTrieste, 188 F.3d at 70. "Absent a showing that the [defendant] knew of other violations [of the law], but declined to prosecute them, [the plaintiff]

would ordinarily be unable to show that [he] was treated selectively." Id.

Similarly, "[p]roof that discriminatory intent was a motivating factor is required to show a violation of the Equal Protection Clause." Okin v. Village of Cornwall-on-Hudson Police Dept., 577 F.3d 415, 438 (2d Cir. 2009).

Even assuming as true plaintiffs' allegations that Lopez, Brust, Jones and Richmond did not arrest and prosecute other bar owners similarly situated to them, plaintiffs have not asserted any factual allegations from which it may plausibly be inferred that such selective treatment was based upon an impermissible consideration. With respect to Lopez, plaintiffs allege only that Lopez was motivated by an intent "to make a merit badge for good work as a detective," (Amend. Compl., ¶ 82), which does not constitute an impermissible consideration. Moreover, plaintiffs' conclusory assertion that Lopez, Brust, Jones and Richmond acted "with the intent to inhibit or punish the exercise of constitutional rights, or malicious[ly] or [in] bad faith to injure Plaintiffs [sic] liberty interests," (Amend. Compl., ¶ 83), is merely "a formulaic recitation of the elements of a cause of action," Ashcroft, 556 U.S. 662, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555, 127 S.Ct. 1955), and is insufficient to state a claim for selective prosecution.

The only "identifiable group" to which plaintiffs allegedly belong for purposes of their selective prosecution claim is one consisting of individuals with criminal histories as a convicted felon. (Amend. Compl., ¶ 87). However, an individual's criminal history is not an impermissible consideration for purposes of the Equal Protection Clause. See, e.g. Scott v. Dennison, 739 F. Supp. 2d 342, 362 (W.D.N.Y. 2010) (holding that classification as a felon or ex-felon is not a "suspect class" under the United States Constitution); Cusamano v. Alexander, 691 F. Supp. 2d 312, 321 (N.D.N.Y. 2009)(accord); Furst v. New York City Transit Authority, 631 F. Supp. 1331, 1336-37

(E.D.N.Y. 1986) (accord); United States v. Wicks, 132 F.3d 383, 389 (7th Cir. 1997) (accord); see also Rosa v. City University of New York, No. 04 cv 9139, 2007 WL 1001416, at * 2 n. 7 (S.D.N.Y. Apr. 2, 2007), aff'd, 306 Fed. Appx. 655 (2d Cir. Jan. 13, 2009) ("[C]riminal history is not a suspect classification."); United States v. Suber, No. 97-3375, 1998 WL 773691, at * 4 (6th Cir. Oct. 16, 1998) (unpublished disposition) (finding that the defendant failed to state a selective prosecution claim where he merely alleged that he was prosecuted because of his criminal history, which is not an impermissible consideration). Accordingly, plaintiffs' equal protection and selective enforcement claims are dismissed without prejudice for failure to state a claim for relief.

            b.      Absolute Immunity

                    i.      Claims against Jones and Richmond

Plaintiffs' claims seeking damages as against Jones and Richmond are dismissed in their entirety with prejudice because those defendants are entitled to absolute prosecutorial immunity from such claims. The Second Circuit has held that:

> "Absolute immunity affords 'complete protection from suit,' Harlow v. Fitzgerald, 457 U.S. 800, 807, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), because it gives 'public officials entrusted with sensitive tasks a protected area of discretion within which to carry out their responsibilities,' Barr v. Abrams, 810 F.2d 358, 361 (2d Cir.1987), so that they will not feel 'constrained in making every decision by the consequences in terms of [their] own potential liability in a suit for damages,' Imbler v. Pachtman, 424 U.S. 409, 424-25, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). The doctrine's nature 'is such that it "accords protection from ... any judicial scrutiny of the motive for and reasonableness of official action,"' Shmueli v. City of New York, 424 F.3d 231, 237 (2d Cir.2005) (quoting Robinson v. Via, 821 F.2d 913, 918 (2d Cir.1987)), even where the challenged conduct was motivated by a wrongful motive or even malice, Bernard v. County of Suffolk, 356 F.3d 495, 503 (2d Cir.2004) (citing Cleavinger v. Saxner, 474 U.S. 193, 199-200, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985))."

In re NYSE Specialists Securities Litigation, 503 F.3d 89, 95-96 (2d Cir. 2007).

Under federal law, prosecutors enjoy absolute immunity from liability in suits seeking monetary damages for acts carried out in their prosecutorial capacities. See Imbler, 424 U.S. at 430, 96 S. Ct. 984; Parkinson v. Cozzolino, 238 F.3d 145, 150 (2d Cir. 2001). Absolute prosecutorial immunity applies, *inter alia*, when a prosecutor prepares to initiate and pursues a prosecution, see, e.g. Peay, 470 F.3d at 68, or engages in administrative duties that are directly connected with the conduct of a trial, Van de Kamp v. Goldstein, 555 U.S. 335, 129 S.Ct. 855, 861-2, 172 L.Ed.2d 706 (2009); see also Warney v. Monroe County, 587 F.3d 113 (2009) ("a prosecutor enjoys absolute immunity even when doing an administrative act if the act is done in the performance of an advocacy function.")

Once absolute immunity attaches, it "attaches to [the prosecutor's] function, not the manner in which he performed it. * * * Accordingly, a prosecutor's motivation, and whether preferable alternatives to the actions taken were available, are irrelevant." Parkinson, 238 F.3d at 150 (internal quotations and citations omitted); see also Shmueli, 424 F.3d at 237 (holding that once the court determines that the challenged prosecution was not clearly beyond the prosecutor's jurisdiction, the prosecutor is shielded from liability for damages for commencing and pursuing the prosecution, regardless of any allegations that his actions were undertaken with an improper state of mind or improper motive).

Since plaintiffs do not allege that the challenged actions of Jones and Richmond were undertaken in the complete absence of all jurisdiction, and the claims against those defendants involve, or relate to, the initiation and prosecution of a criminal action against plaintiffs, Jones and Richmond are entitled to absolute immunity from plaintiff's claims seeking monetary damages.

Accordingly, the complaint is dismissed in its entirety with prejudice as against Jones and Richmond pursuant to 28 U.S.C. §§ 1915(e) and 1915(A)(b).

### ii.  Witnesses Testimony

Lopez, Brust and the government witnesses are also entitled to absolute immunity from plaintiffs' damages claims relating to their testimony before the Grand Jury and at trial. Witnesses, including law enforcement officers, who testify at judicial proceedings are entitled to absolute immunity with respect to any claim based upon their testimony. See Rehberg, 132 S. Ct. at 1505, 1507; Briscoe v. LaHue, 460 U.S. 325, 329, 103 S. Ct. 1108, 75 L. Ed. 2d 96 (1983); Rolon v. Henneman, 517 F.3d 140, 145 (2d Cir. 2008). In addition, a witness who testifies before a Grand Jury, including a law enforcement officer, "has absolute immunity from any Section 1983 claim based on the witness' testimony." Rehberg, 132 S. Ct. at 1507-8. Accordingly, plaintiffs' damages claims against Lopez, Brust and the government witnesses relating to their testimony before the Grand Jury and at trial are dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e) and 1915(A)(b).

## IV.  Conclusion

For the reasons set forth above: (1) plaintiffs' applications to proceed *in forma pauperis* are granted; (2) plaintiffs' damages claims (a) against Lopez, Brust and the government witnesses relating to their testimony before the Grand Jury and at trial are *sua sponte* dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A and (b) against Jones and Richmond are *sua sponte* dismissed in their entirety with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A;

22

(3) plaintiff's remaining claims are otherwise *sua sponte* dismissed in their entirety without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; and (4) plaintiffs' applications for the appointment of *pro bono* counsel are denied as moot.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962). The Clerk of the Court is directed to close this case.

SO ORDERED.                                    s/ Sandra J. Feuerstein

                                               _____
                                               Sandra J. Feuerstein
                                               United States District Judge

Dated:        July 30, 2012
              Central Islip, New York